**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOLDA D. HARRIS, | CIVIL ACTION NO. 11-1321 (MLC) |
| Plaintiff, | **O P I N I O N** |
| v. | |
| COMMISSIONER GARY LANIGAN, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Golda D. Harris, a state inmate confined at New Jersey State Prison ("NJSP") when she submitted the Complaint, seeks to bring this action in forma pauperis. Based on her affidavit of indigence, the Court will grant the application to proceed in forma pauperis under 28 U.S.C. § 1915(a) and file the Complaint. The Court must now review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune. The Court concludes that the Complaint should proceed in part.

## I. BACKGROUND

Harris brings this action under Title II, III and V of the Federal American with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD") against, among others, Gary Lanigan, New Jersey Department of Corrections ("NJDOC") Commissioner; the NJDOC; Greg Bartkowski, NJSP Administrator; Jim

Barnes, Assistant Superintendent at NJSP; Dr. Johnny Wu, M.D., Medical Director at NJSP; Desha Jackson, NJDOC Division of Operations; Sgt. Bundy at NJSP; Officer Whittfield at NJSP; Officer Snowling at NJSP; and William Hauck, Administrator at Edna Mahan Correctional Facility ("EMCF"). (Compl., Caption and ¶¶ 4b through 4k). The following factual allegations are taken from the Complaint, and are accepted for purposes of screening only. The Court has made no findings as to the veracity of Harris's allegations.[1]

Harris alleges that from January 9, 2009 through the date she submitted the Complaint (on or about March 9, 2011), defendants have refused to afford her handicap accommodations, namely, her cane, shower privileges, wheelchair access for trips and visits, and medical housing and bedding requests. Further, Harris alleges that defendants Hauck and Bartkowski used their authority as Administrator at the EMCF and Administrator at NJSP, respectively, to direct staff to carry out these instructions in denying her handicap accommodations. (Compl.)[2]

Harris also alleges that defendants Lanigan, Bartkowski, and Barnes failed to enforce the ADA insofar as it pertained to her.

---

[1] The Court presumes that Harris intended to assert a claim under Title V of the Rehabilitation Act of 1973, as there is no Title V under the ADA.

[2] The Complaint indicates that Harris was confined at EMCF from (or before) January 9, 2009, the date she began complaining about the denial of handicap accommodations, through September 3, 2009, when she was transferred from EMCF to NJSP.

(Compl., ¶¶ 4b, 4c, 4f and 6.) Harris further alleges that defendant Wu denied her ADA protection by stating that Harris has no physical disability or handicap that would require a cane, wheelchair, toilet seat extension, handicap shower and proper bedding. (Compl., ¶¶ 4g, 6.)

Harris alleges that defendant Jackson falsified medical records, resulting in the violation of her rights under the ADA, namely, the taking away of her cane, wheelchair access, and other handicap accommodations. (Compl., ¶¶ 4h, 6.) On December 3, 2010, defendants Sgt. Bundy, Officer Whittfield and Officer Snowling took Harris's cane and failed to help her to walk. (Compl., ¶¶ 4i, 4j, 4k and 6.)

Harris seeks wheelchair access to and from her cell for medical visits and consultations, court trips and visitation. She also seeks to have her cane returned to her, and to have an elevated hospital bed, and a handicap toilet and shower. Harris requests that her status be changed back to "handicap medical", and seeks damages.

**II. PURPORTED CLAIMS UNDER 42 U.S.C. §§ 1983, 1985, & 1986**

Harris seems to indicate that she is pursuing relief under 42 U.S.C. § 1983, but her federal claims are strictly asserted under the ADA only. Thus, the Court will review the Complaint for causes of action insofar as they concern federal law under the ADA only. The § 1983 claims would be barred in any event, as

a private party's suit seeking to impose a liability that must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the relief sought. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979). Such claims would also be barred insofar as they could be based on supervisor liability. See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995); Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Harris also seems to indicate that she is pursuing relief under 42 U.S.C. §§ 1985(3) and 1986, but provides no factual allegations in support. The elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or

property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted). To state a claim under § 1986, a plaintiff must show: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." Clack v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). Conspiracy allegations "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009); see Michel v. Wicke, No. 10-3892, 2011 WL 3163236, at *4 (D.N.J. July 25, 2011) ("factual allegations supporting the conspiracy claim may not be generalized or conclusory."). Without any factual content, Harris has not stated a "plausible claim for relief" under 42 U.S.C. §§ 1985(3) and 1986. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

## III. STANDARDS FOR A SUA SPONTE DISMISSAL

A district court must review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss

any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). But the Court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)); see Erickson, 551 U.S. at 93-94 (for pro se prisoner complaint, Court reviewed whether it complied with Rule 8(a)(2)).

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), addressed whether a complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding treatment during detention, which, if true, violated that plaintiff's rights. Id. The Court examined Federal Rule of Civil Procedure Rule 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[3] Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives . . .. Determining whether a complaint states a plausible claim for relief will

[3] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

> ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50 (citations omitted).

The Court further explained that a court

> can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

To prevent a summary dismissal, civil complaints must allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. A plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see Twombly, 505 U.S. at 555, & n.3; Fowler, 578 F.3d at 210.

A district court must conduct the Iqbal analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to

> "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

But this Court is mindful that the sufficiency of this pro se pleading must be construed liberally in Harris's favor, even after Iqbal. See Erickson, 551 U.S. at 93-94.

## IV. ANALYSIS

Harris alleges that her ADA rights have been violated by the denial of wheelchair access, an elevated hospital bed, access to handicap toilet and showers while incarcerated, and by the refusal to return her cane and shoe inserts. Harris asserts a claim under both Title II and Title III of the ADA. She also appears to assert a claim under Title V of the Rehabilitation Act, Section 504.[4]

---

[4] Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding; it provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The ADA and the Rehabilitation Act generally are interpreted in pari materia. See Kemp v. Holder, 610 F.3d 231, 234-35 (5th Cir. 2010). Indeed, "nothing in [the ADA] shall be construed to apply a lesser standard than the standards applied under title V [i.e., § 504] of the Rehabilitation Act ... or the regulations issued by Federal agencies pursuant to such title." 42 U.S.C. § 12201(a); Bragdon v. Abbott, 524 U.S. 624, 632 (1998) ("directive requires us to

Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. § 12182. "The phrase 'pubic accommodation' is defined in terms of 12 extensive categories," PGA Tour, Inc. V. Martin, 532 U.S. 661, 676 (2001), including lodging, food or drink establishments, places of exhibition, entertainment, public gathering, public display/collection, recreation, exercise, or education, sales, rental, and service establishments, public transportation stations, and social service center establishments, "if the operations of such entities affect commerce". 42 U.S.C. § 12181(7). In the Complaint, Harris fails to establish that the correctional facilities at issue, the EMCF or the NJSP, fall into any of the categories subject to Title III of the ADA. Rather, these facilities are considered as a "public entity" under Title II of the ADA, which defines "public entity" as including "any State or local government[]" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government". 42 U.S.C. § 12131(a). A public entity is broadly construed as including "every possible agency of state or local government". Lee v. City of Los Angeles, 250 F.3d 668, 691

construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act"); cf. 42 U.S.C. § 12133 (providing "[t]he remedies, procedures, and rights" available under the Rehabilitation Act "shall be the remedies procedures, and rights" available under Title II of the ADA). Accordingly, this Court's analysis of the ADA claim encompasses and applies to both statutes.

(9th Cir. 2001) (noting both state prisons and local law enforcement agencies are public entities under ADA). Thus, covered public entities are defined to include state and local governments and their agencies and instrumentalities. 42 U.S.C. § 12131(1). The ADA claim against the NJDOC and state prison facilities fall under Title II only, not Title III.

The ADA's purpose is "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute prohibits discrimination against individuals with disabilities in the areas of employment (Title I); public services, programs and activities (Title II); and public accommodations (Title III). See Tennessee v. Lane, 541 U.S. 509, 516 (2004). Only Title II is arguably applicable here. Title II provides that "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To demonstrate a Title II violation, a plaintiff must show (1) she is a "qualified individual with a disability"; (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefits, or discrimination was by reason of

her disability. See 42 U.S.C. § 12132; Lopez v. Beard, 333 Fed.Appx. 685, 687 n.1 (3d Cir. 2009); Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1193 (10th Cir. 2007). The Court will assume for immediate purposes that Harris is a qualified disabled person within the meaning of the statute.[5]

Private citizens may seek damages against such state and local governments, their agencies and instrumentalities, and state officers in their official capacities. 42 U.S.C. § 12133. Individual liability is not available for discrimination claims brought under Title II of the ADA. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) (noting "individuals are not liable under Titles I and II of the ADA") (citing Garcia v. S.U.N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (holding Title II does not allow suits against individuals)).

Thus, as a preliminary matter, Harris cannot proceed against any defendants in their individual capacities for monetary damages. As the Complaint asserts that Harris is proceeding against individual defendants for monetary damages in their individual capacities, those claims for monetary damages will be dismissed.

---

[5] "Qualified" disabled persons include those who "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

As to any claim for injunctive relief, the Complaint fails, in part, to allege facts suggesting that Harris was deprived of program participation "by reason of" her disability. Instead, Harris claims that she is being denied access to the equipment that she claims she is entitled to by virtue of her disability. This denial, without more, is not tantamount to an ADA violation. See, e.g., Dukes v. Georgia, 428 F.Supp.2d 1298, 1324 (N.D. Ga.), aff'd, 212 Fed.Appx. 916 (11th Cir. 2006) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (noting ADA addresses a disabled person's rights regarding access to programs and services enjoyed by all, but does not provide general cause of action to challenge manner of treatment of underlying disability)); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (citing Bryant, 84 F.3d at 249) (noting inadequate treatment is not, without more, an ADA violation). Here, with the exception of the denial of a wheelchair and confiscation of Harris's cane, which has hindered her mobility and access to the courts, visitation and other programs or activities at the prison facilities, nothing in Harris' allegations concerning denial of extra bedding and blankets, a hospital bed, and shoe inserts, suggests that Harris has been denied participation or access to prison programs and activities sufficient to support an ADA claim. Similarly, Harris's allegations that Wu and Jackson falsified medical records so as to deny her accommodations for her disability, do not suggest that Harris was denied access or

participation in prison programs or activities on the basis of her disability.

But this Court is inclined to allow the claim concerning denial of wheelchair access and a cane to proceed, because these restrictions would appear to hinder her access and participation in prison programs and other activities, as suggested by her allegations that denial of wheelchair access precluded her attendance at court or visits. Likewise, Harris's claim concerning the restrictions on handicap toilet and shower accommodations will be allowed to proceed. These ADA claims will be allowed to proceed as against the NJDOC only.

Because this Court will allow this limited ADA claim to proceed, the Court will exercise supplemental jurisdiction over Harris's related NJLAD claim pursuant to 28 U.S.C. § 1367(a). All other ADA claims for injunctive relief will be dismissed for failure to state a claim.

## V. CONCLUSION

The ADA claim and NJLAD claims regarding wheelchair access, use of a cane, and handicap toilet and shower accommodations will be allowed to proceed as against NJDOC only. All other claims will be dismissed. The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: March 22, 2012